# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE EVANS,<br><br>                                      Plaintiff,<br>     vs.<br><br>CITY OF SAN DIEGO, et al.,<br><br>                                      Defendants. | CASE NO. 11 CV 0396 MMA (WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No.38] |

     Currently pending before the Court is Defendants City of San Diego, et al.'s motion for summary judgment.[1] [Doc. No. 38] Plaintiff filed a response in opposition on August 27, 2012 [Doc. No. 40] and Defendants filed a reply on August 31, 2012 [Doc. No. 46]. The Court determined the matter suitable for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment.

//

//

//

---

[1] The following individual defendants move for summary judgment: Brandon Gaines, Michael Serrano, Christian Sharp, Officer Wiese, Officer Navarro, and James Milano (collectively, "Defendant Officers"). The parties stipulated to the dismissal of Plaintiff's claim against Officer Navarro. [Doc. No. 57.] Accordingly, Officer Navarro is no longer a party to this action. [Doc. No. 58.]

**BACKGROUND**

The following facts are not reasonably in dispute.[2] At approximately 1 a.m. on August 14, 2009, there were large crowds of people exiting from bars onto Fifth Avenue in Downtown San Diego. [*Def.'s MSJ*, Doc. No. 38-1, p.2.] Plaintiff, who was nineteen years old at the time, had consumed some amount of alcohol. [*Id.*] While on the west side of Fifth Avenue, Plaintiff noticed her cousin across the street arguing with people, so Plaintiff crossed to the east side of the street to calm her cousin down . [*Pl.'s Oppo. to Def.'s MSJ*, Doc. No. 40, p.2-3.; *Def.'s Reply to Pl.'s Oppo.*, Doc. No. 46-4, p.8.] Either before or after Plaintiff crossed to the east side of the street, a San Diego police officer discharged pepper spray into a crowd to break up a fight. [*Pl.'s Oppo. to Def.'s MSJ*, Doc. No. 40, p.3; *Def.'s Reply to Pl.'s Oppo.*, Doc. No. 46-4, p.8.] Plaintiff re-crossed to the west side of Fifth Avenue with a woman who had been pepper sprayed, and was arrested.[3] [*Pl.'s Oppo. to Def.'s MSJ*, Doc. No. 40, p.3; *Def.'s Reply to Pl.'s Oppo.*, Doc. No. 46-4, p.9-11.]

Plaintiff initiated the pending action against the City and several individual defendants alleging claims for: (1) excessive force in violation of her Fourth Amendment rights under 42 U.S.C. Section 1983; (2 ) unlawful seizure in violation of her Fourth Amendment rights under 42 U.S.C. Section 1983; (3) unlawful policies, customs, or habits in violation of 42 U.S.C. Section 1983[4]; (4) assault and battery; (5) and intentional infliction of emotional distress. [Doc. No. 23.]

---

[2] The facts cited herein are taken from Defendants' moving papers and Plaintiff's opposition, and construed in the light most favorable to Plaintiff. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). The Court notes that the overwhelming majority of facts are disputed by the parties. Disputed material facts are discussed in detail where relevant to the Court's analysis of a specific cause of action.

[3] It is disputed at what point Plaintiff was arrested. For instance, while Plaintiff claims that she was arrested after walking the woman to the west side of Fifth Avenue, Defendants state that "[a]fter Plaintiff crossed from the east side of Fifth Avenue, from Decos, with another woman, Plaintiff left the other woman on the east sidewalk and attempted to cross back west to east, to the decos [sic] side of Fifth Avenue" before she was arrested. [*Def.'s Reply to Pl.'s Oppo.*, Doc. No. 46-4, p.21.] If Plaintiff crossed with the woman from the east side of the street to the west side of the street, then it is difficult to comprehend how the woman was left on the east side. However, logical inconsistencies aside, it is undisputed that Plaintiff was arrested sometime after crossing from the east side of the street to the west side of the street with the woman.

[4] This claim is commonly referred to a "*Monell*" claim. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." )

Defendants move for summary judgment in their favor as to all five claims. [*Def.'s MSJ*, Doc. No. 38-1.]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hubbard v. 7-Eleven*, 433 F. Supp. 2d 1134, 1139 (S.D. Cal. 2006) (citing former Fed. R. Civ. P. 56(c)(2)). It is beyond dispute that "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag*, 475 F.3d at 1035 (citation omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks and citations omitted).

A mere scintilla of evidence is not sufficient "to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & Cnty of S.F.*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). Thus, in opposing a summary judgment motion it is not enough to simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). However, when assessing the record to determine whether there is a "genuine issue for trial," the Court must "view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in his favor." *Horphag*, 475 F.3d at 1035 (citation omitted). On summary judgment, the Court may not make credibility determinations; nor may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. Thus, as framed by the Supreme Court, the ultimate question on a summary judgment motion is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

//

# DISCUSSION

## I. EVIDENTIARY OBJECTIONS

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Relevant evidence is generally admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). A statement that "the declarant does not make while testifying at the current trial or hearing" and which "a party offers in evidence to prove the truth of the matter asserted in the statement" is hearsay. Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or the Supreme Court provides otherwise. Fed. R. Evid. 802.

### A. PLAINTIFF'S OBJECTIONS

Plaintiff objects that Defendants' Motion for Summary Judgment relies on inadmissible and irrelevant evidence. Specifically, Plaintiff objects that Defendants' use of video footage recorded after the initial arrest and Defendants' references to "gang" photos found on Plaintiff's phone after the initial arrest are irrelevant to the probable cause determination of the false arrest claim. Plaintiff also objects to Defendants' Undisputed Material Facts ("UMF") Nos. 5, 30, 31, 60, 61, 64, 67, 68, 69, 70, 72, 73, 74, 75, and 77 as irrelevant, "[i]n accordance with the preceding objections." [Doc. No. 40.]

Plaintiff's objections to the use of video footage and references to gang photos found on Plaintiff's phone are sustained in regards to the false arrest claim. The video evidence documenting Plaintiff's actions after the initial arrest is inadmissible because it is used to support the inference that Plaintiff was so agitated and unruly after her arrest that she must have also been agitated and unruly before her arrest, therefore making it more likely that Defendants had probable cause to arrest her. This type of character evidence is inadmissible character evidence under Federal Rule of Evidence 404(a)(1). Similarly, evidence of gang photos on Plaintiff's phone is

inadmissible because Plaintiff's phone was not searched until after she was arrested. Therefore, any photos on Plaintiff's phone are irrelevant to the Court's determination of whether or not there are genuine issues of material fact regarding the existence of probable cause for Plaintiff's arrest. To the extent that Plaintiff further objects to any of the UMFs listed, Plaintiff has raised no specific arguments as to why the UMFs are irrelevant, and Plaintiff's objections are overruled.

### B.   DEFENDANTS' OBJECTIONS

Defendants object that Plaintiff's evidence offered in opposition to Defendants' UMF Nos. 5, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 23, 24, 28, 32, 34, 35, 36, 38, 39, 47, 50, 54, 57, 61, 63, 67 and 73, and in support of Plaintiff's UMF Nos. 115, 132, 133, 135, 139, 147, 155, 157, 180, 181, 182, 183, 184, 185, 186, 187, is inadmissible. Specifically, Defendants argue that Plaintiff's Exhibits "L" and "M" are unauthenticated, lacking foundation, and inadmissible hearsay. Defendants' also object to Plaintiff's use of Exhibit C in support of Plaintiff's opposition to Defendants' Motion for Summary Judgment on the *Monell* claim. [Doc. No. 46.]

The portions of Exhibit L cited by Plaintiffs are inadmissible hearsay. Plaintiff's Exhibit L is part of an Internal Affairs Investigation Report apparently generated in response to a complaint filed by Plaintiff. Plaintiff cites to witness interviews contained in the report in order to prove the truth of those witness's statements. For instance, Plaintiff cites to the investigator's report of an interview with a witness named Javier Cendejas in order to prove the truth of Mr. Cendejas's statements about the incident in question. Mr. Cendejas's statements, like the other witness's statements, are out of court statements that do not fall into a hearsay exception. Therefore, they are inadmissible, and Defendants' objection to Exhibit L is sustained.

Plaintiff's Exhibit M is the curriculum vitae of Plaintiff's expert Jack Smith. Plaintiff's Exhibit M is not cited by Plaintiff in her opposition to the Motion for Summary Judgment, but appears to have been included to support the credibility of Plaintiff's expert witness. The Court does not make credibility determinations when considering the Motion for Summary Judgment. *See Anderson*, 477 U.S. at 255. Therefore Defendants' objection to Plaintiff's Exhibit M is sustained.

1    Plaintiff's Exhibit C is a portion of the deposition of Plaintiff's expert Jack Smith. Plaintiff relies on the testimony of Mr. Smith to support Plaintiff's *Monell* claim regarding Defendants' allegedly unlawful policies or customs. [Doc. No. 42-3.] Defendants' Exhibit 19 is another portion of Jack Smith's deposition, in which Mr. Smith explicitly states that he is not offering any opinion regarding the *Monell* claim in this matter because, at that time, he had not "received enough information to even contemplate forming a *Monell* claim." [Doc. No. 38-8; 139:5-9, 139:20-23.] Plaintiff cannot rely on Mr. Smith's deposition testimony to support Plaintiff's *Monell* claim where Mr. Smith explicitly stated that he was not giving an opinion on the *Monell* claim. Therefore Defendants' objection to the use of Plaintiff's Exhibit C to support Plaintiff's *Monell* claim is sustained.

## II.  FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT

Plaintiff alleges Defendant Officers infringed her Fourth Amendment right to be free from unreasonable seizures when they falsely arrested her. "Whether plaintiff's right to be free from unreasonable search and seizure under the Fourth Amendment was violated hinges on the validity of her arrest. The validity of the arrest, in turn, depends on whether, at the time of the arrest," there was probable cause to make the arrest. *Weinstein v. City of Eugene*, 2007 U.S. Dist. LEXIS 56554 *6 (D.C. Or. Aug. 1, 2007) *aff'd* 337 Fed. Appx 700 (9th Cir. 2009); *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (Fourth Amendment requires an officer have probable cause to make a warrantless arrest).

Defendants move for summary judgment on the ground that the officers had probable cause to arrest Plaintiff. Defendants further contend that even if the officers lacked probable cause, they are entitled to qualified immunity. Plaintiff argues summary judgment is improper, because there are disputed issues of material fact from which a jury could reasonably conclude Defendant Officers lacked probable cause to arrest, and Defendant Officers are not entitled to immunity because they violated Plaintiff's clearly established constitutional right to be free from unreasonable seizure. The Court considers each argument in turn.

//
//

A.     PROBABLE CAUSE

The government bears the burden of demonstrating a warrantless arrest did not violate the Fourth Amendment because the officers had probable cause to effect the arrest. *United States v. Newman*, 265 F. Supp. 2d 1100, 1106 (D. Ariz. 2003) (citation omitted).  Regardless of the stated reason for an arrest, probable cause exists where there is probable cause to arrest for any criminal offense existing under a specific criminal statute at the time of arrest. *Davenpeck v. Alford*, 543 U.S. 146, 153-155 (2004); *see also Edgerly v. City and Cnty of S.F.*, 599 F.3d 946 (9th Cir. 2010). An officer with probable cause to believe that even a very minor criminal offense has been committed in his or her presence may arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (Arrest where officer had probable cause to believe that a driver was not wearing her seatbelt in violation of state statute constitutionally permissible, even if not strictly necessary.)  However, probable cause must be present based on the "facts and circumstances known to the officers *at the moment of the arrest*."  *Newman*, 265 F. Supp. 2d at 1106 (emphasis in original) (citing *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1998)).[5]

In considering all of the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, it is evident that Defendant Officers possessed probable cause to arrest Plaintiff.  There is no dispute that Plaintiff was observed crossing the street by Defendant Officers.  [*See e.g.,* Defendants' UMF 11, 12, 26; Plaintiff's UMF 92, 106, 123.]  In her deposition, Plaintiff states that when she crossed the street she did not do so "at the light."  [Doc. No. 38-6; 7:16-17.]  Additionally, Plaintiff does not dispute that she crossed the street "mid block," [*see* Defendants' UMF 11,] and that "[O]fficer Gaines stopped traffic in the east lane for [her] to finish crossing."  [Plaintiff's UMF 128.]  California Vehicle Code Section 21955 ("jaywalking") states that "[b]etween adjacent intersections controlled by traffic control signal

---

[5] In determining whether there is a genuine issue of material fact regarding the existence of probable cause, the Court is prohibited from considering events that occurred after Plaintiff's arrest. *See Oxborrow v. City of Coalinga*, 559 F. Supp. 2d 1072, 1081-82 (E.D. Cal. 2008) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

1 devices or by police officers, pedestrians shall not cross the roadway at any place except in a
2 crosswalk." Defendant Gaines observed Plaintiff crossing the street mid-block, not in a crosswalk.
3 Therefore it cannot reasonably be disputed that probable cause existed to arrest Plaintiff for
4 jaywalking.

5 Although it is difficult for the Court to determine from Plaintiff's Opposition, Plaintiff may
6 raise the argument that she was justified in crossing the street mid-block because she was
7 following the lawful order of a police officer:

> Ms. Evans simply followed orders and attempted to bring the unidentified female to a bar to decontaminate...Ms Evans does not believe that Sgt. Sharp told her to stop [crossing the street]...For example, Officer Serrano believed that Sgt. Sharp was escorting the women across the street so the unidentified female could decontaminate.

[Doc. No. 40, p.13] (*citations omitted*).

In support of the proposition that Officer Serrano believed that Sergeant Sharp was escorting Plaintiff across the street, Plaintiff cites Plaintiff's UMF 125, which states that "[i]t appeared to Officer Serrano that Sergeant Sharp was escorting them out of the street." [Doc. No. 40-1, p.59.] Plaintiff's UMF 125 cites Doc. No. 42-4, the Deposition of Officer Serrano, at 27:11-28:5 and 29:17-25 for support. But in the portions of the Officer Serrano's deposition cited by Plaintiff, Officer Serrano only states that "[Sergeant Sharp] was walking with [Plaintiff] and *basically* escorting [her] out of the street." [Doc. No. 42-4; 27:18-21] (emphasis added). Officer Serrano then went on to say that Sergeant Sharp was "paralleling them...saying, 'Ladies, please get out of the street." [Doc. No. 42-4; 28:5, 29:2-3.] Therefore, there is no evidence that an officer ordered Plaintiff to cross the street mid-block.

Even if Plaintiff did have a justification for jaywalking, such a defense would not negate the existence of probable cause at the time of the incident sufficient for Defendant Officers to arrest Plaintiff.

B. Qualified Immunity

Defendants argue that even if probable cause did not exist to arrest Plaintiff, her first claim must still be dismissed because Defendant Officers are immune from liability. "Government officials performing discretionary functions are entitled to qualified immunity from damages if

- 8 - 11cv0396

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991) (citations omitted). In limited circumstances, an officer may be entitled to qualified immunity even if he erroneously arrests an individual without probable cause. *Id*. at 1443. For example, "qualified immunity is available if a reasonable police officer could have believed that his . . . conduct was lawful, in light of the clearly established law and the information" possessed by the officer at the time of the arrest.[6] *Id.*

The Court conducts a two-step inquiry to determine whether an officer is entitled to qualified immunity. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (court may conduct inquiry in any order it prefers). Under one prong, the Court considers whether "taken in the light most favorable to the [plaintiff], the facts alleged show the officer's conduct violated a constitutional right." *Id*. (internal marks omitted). If the answer is "no," the inquiry ends and judgment shall be entered in favor of the defendant, as the plaintiff cannot prevail. *Motley v. Parks*, 432 F.3d 1072, 1077, *rev'd on other grounds*, 687 F.3d 1189 (9th Cir. 2012). Because Defendant Officers had probable cause to arrest Plaintiff, they did not violate Plaintiff's Fourth Amendment rights. [*See*, *supra*, p.6-8.] Absent a constitutional violation, the Court's inquiry is complete and Defendant is entitled to qualified immunity on Plaintiff's section 1983 claim.

Even if the Court assumes probable cause did not exist, Defendant Officers would nevertheless be entitled to qualified immunity because reasonable officers in Defendants' position would not have clearly known that the arrest was unlawful under the circumstances. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"); *Ramirez*, 560 F.3d at 1020 (facts must establish that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). Plaintiff's first cause of action therefore fails on this additional, independent ground. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the false arrest claim.

---

[6] Where, as here, the underlying facts are not reasonably in dispute the Court may properly determine whether a defendant is entitled to qualified immunity in the context of a summary judgment motion. *Fuller*, 950 F.2d at 1443.

### III. EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AMENDMENT

Defendants also move for summary judgment as to Plaintiff's excessive force claim. "Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard." *Long v. City & Cnty of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). The Court must determine whether the force used by each Defendant Officer was "objectively reasonable" as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97 (citations omitted). Proper application of the Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Even if a constitutional violation is shown, the plaintiff still "bears the burden of proving that the rights [he] claims were 'clearly established at the time of the alleged violation." *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009) (quoting *Moran v. State of Wash.*, 147 F.3d 839, 844 (9th Cir. 1998)). The pertinent inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* (citation omitted).

    A.    DEFENDANT SHARP

        *1.    There is a Genuine Issue of Material Fact Whether Sergeant Sharp's Conduct was Reasonable*

There is a genuine issue of material fact as to whether Sergeant Sharp placed Plaintiff in a choke hold. Defendants state that "Sergeant Sharp tried to direct Plaintiff to the west curb, but she hit or pushed" him. [Doc. No. 38-1, p.15.] Plaintiff, on the other hand, asserts that Sergeant Sharp, without provocation, grabbed Plaintiff "from behind in a chokehold fashion with his elbow" just as Plaintiff was stepping onto the curb. [Doc. No. 40, p.3*; see also* Doc. No. 46-4, p.34-36.] On summary judgment, the Court may not make credibility determinations; nor may it weigh

conflicting evidence. *See Anderson*, 477 U.S. at 255. Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that Sergeant Sharp's use of a choke hold against Plaintiff was an excessive use of force in relation to the severity of Plaintiff's purportedly criminal behavior.

     *2. Qualified Immunity*

Assuming Plaintiff's testimony to be true, no reasonable officer could have believed that placing a woman in a choke hold for jaywalking was lawful. Defendants have presented no evidence that would justify such a use of force against Plaintiff; therefore, Sergeant Sharp is not entitled to qualified immunity. Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's excessive force claim against Defendant Sharp.

  B. DEFENDANTS SERRANO AND GAINES

    *1. There is a Genuine Issue of Material Fact Whether Officers Serrano and Gaines' Conduct was Reasonable*

There are genuine issues of material fact as to whether Plaintiff was running from Sergeant Sharp at the time of arrest, or standing passively, and whether Officer Serrano merely deflected Plaintiff into a car, or whether Officers Serrano and Gaines threw her into a car with sufficient force to render her unconscious.

      i. Defendants' Version of Events

Defendants state that while running away from Sergeant Sharp, Plaintiff ran into Officer Serrano, who "used Plaintiff's momentum to deflect Plaintiff and put Plaintiff onto the hood of a car." [Doc. No. 46-4, p.44.] "From the hood of the car, Officer Serrano put Plaintiff onto the sidewalk, face down." [Doc. No. 46-4, p.45.] Once on the ground, Officer Gaines assisted Officer Serrano in handcuffing Plaintiff's hands behind her back. [Doc. No. 46-4, p.46.] When Officer Serrano and Officer Gaines picked Plaintiff up from the sidewalk to transport her to the patrol car, Plaintiff "kicked Officer Weise in the groin," requiring the officers to put Plaintiff back on the sidewalk. [Doc. No. 46-4, p.47.] Officer Serrano and Officer Gaines then decided to "maximally

1  restrain Plaintiff."[7] [Doc. No. 46-4, p.57.] Plaintiff continued to "thrash violently," such that
2  Officer Serrano was unable to transport Plaintiff to his patrol car. [Doc. No. 46-4, p.60.] Officer
3  Serrano warned Plaintiff that if she did not stop, he would pepper spray her. *Id.* Plaintiff
4  continued to resist the attempt to move her, so Officer Serrano "gave Plaintiff a one second spray
5  to her face" before placing her in the patrol car. *Id.*

### ii. Plaintiff's Version of Events

After Sergeant Sharp released Plaintiff from the choke hold, Sergeant Sharp grabbed his baton and told Plaintiff "you have a felony." [ Doc. No. 40-1, p.56.] Two officers then threw Plaintiff onto the hood of a car. [Doc. No. 40-1, p.56.] Plaintiff does not remember what happened after she hit the car. She lost consciousness.[8] When she regained consciousness, she was on the ground in maximum restraints. Plaintiff "had a boot on the small of her back, a knee on her neck and a third officer was kicking her." Plaintiff was then picked-up, pepper sprayed, and placed in the patrol car. [Doc. No. 40-1, p.56.]

### iii. The Conduct of Officer Gaines and Officer Serrano Was Not Objectively Reasonable

There is a genuine issue of material fact as to what type of force was used in effecting Plaintiff's arrest. While "[p]olice officers...are not required to use the least intrusive degree of force possible," the inquiry is still whether "the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene." *Forrester v. City of San Diego*, 25 F.3d 804, 807-08 (9th Cir. 1994) (citations omitted). Plaintiff asserts that she was lifted up off the ground and slammed "onto the hood of a parked car with force sufficient to render her unconscious." [Doc. No. 46-4, p.45.] Viewing the evidence in the light most favorable to the Plaintiff, a jury could find that such a use of force would not have been reasonable.

---

[7] "Officer Serrano's application of the maximum restraints required him to place Plaintiff on the ground face down and wrap a cord around Plaintiff's ankles and waist. Another cord [was run] through the handcuff and ankle cord and...affixed to the waist cord." [Doc. No. 46-4, p.58.]

[8] Plaintiff, in her deposition, stated "I remember going into a car head first. I don't remember how many times. I don't remember how many cars...I remember waking up on the ground in pain. [Doc. No. 42-2, p.72.]

### 2. *Qualified Immunity*

Assuming Plaintiff's testimony to be true, no reasonable officer could have believed that throwing a woman who was standing passively into a car hood with enough force to render her unconscious was lawful. Defendants have presented no evidence that would justify such a use of force against Plaintiff, therefore Officers Serrano and Gaines are not entitled to qualified immunity. Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's excessive force claim against Defendants Serrano and Gaines.

### C. DEFENDANTS WIESE AND MILANO

Plaintiff opposes Defendants' Motion for Summary Judgment on the excessive force claims against Officers Wiese and Milano on the grounds that they failed to intervene on her behalf to prevent the excessive force of Officers Sharp, Serrano, and Gaines. [Doc. No. 40, p.17.] Because this issue arises on summary judgment, Defendants bear the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants argue that Plaintiff is unable to provide evidence showing that Officers Wiese and Milano used excessive force against Plaintiff. However, Defendants do not address the failure to intervene claim, except to say that "there was no constitutional tort based upon their 'failure to intervene.'" [Doc. No. 46, p.7-8.] Viewing the facts of this case and the inferences to be drawn from those facts in the light most favorable to Plaintiff, the Court finds that Defendants have not met their burden.[9] Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's excessive force claim against Defendants Wiese and Milano.

### IV. 42 U.S.C. § 1983 CLAIMS AGAINST THE CITY—FAILURE TO SUPERVISE AND FAILURE TO TRAIN

Under *Monell*, a local governmental entity may be liable for failing to act to preserve constitutional rights under section 1983 where the plaintiff can establish: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this

---

[9] Although Defendants argue that Officers Wiese and Milano are entitled to qualified immunity "based upon their reasonable conclusions regarding fellow officers' use of force," Defendants do not meet their burden in addressing whether Defendant Officers are entitled to qualified immunity even if they failed to intervene against the alleged use of excessive force. [Doc. No. 46, p.7-8.]

1 policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the
2 policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v.*
3 *Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Geraldine Harris*, 489 U.S.
4 378, 389-91 (1989)). A single occurrence of unconstitutional action by a non-policymaking
5 employee is insufficient to establish the existence of an actionable municipal policy or custom.
6 *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989). "Only if a plaintiff
7 shows that his injury resulted from a 'permanent and well settled' practice may liability attach for
8 injury resulting from a local government custom." *Thompson v. City of L.A.*, 885 F.2d 1439, 1444
9 (9th Cir. 1989).

10 Defendants move for summary judgment on the *Monell* claim on the grounds that
11 Plaintiff's claim rests exclusively on principals of respondeat superior. Plaintiff opposes
12 Defendants' Motion for Summary Judgment, arguing that "a jury could find the [police] training
13 program severely lacking," and the San Diego Police Department "has ratified Sgt. Sharp's
14 conduct and that of other defendants...by having them work as supervisors." [Doc. No. 40, p.23.]

15 There are no genuine issues of material fact regarding Plaintiff's *Monell* claim. Plaintiff's
16 claim fails as a matter of law because Plaintiff fails to put forth any evidence to establish that the
17 San Diego Police Department had a policy amounting to the deliberate indifference to Plaintiff's
18 constitutional rights, or that the policy was the driving force behind the alleged constitutional
19 violations. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the
20 *Monell* claim.

21 **V.    STATE LAW CLAIMS**

22 Plaintiff alleges state-based causes of action against Defendant Officers for assault, battery,
23 and intentional infliction of emotional distress ("IIED"). Defendants are not entitled to summary
24 judgment on the assault and battery claims because, viewing the facts of this case in the light most
25 favorable to Plaintiff, a reasonable jury could conclude that Defendant Officers' use of force was
26 unreasonable. However, Plaintiff's IIED claim fails as a matter of law because Plaintiff provides
27 no evidence that Defendant Officers had the intention of causing, or acted with a reckless
28 disregard of the probability of causing, Plaintiff's alleged emotional distress.

A. ASSAULT AND BATTERY

Plaintiff's fourth cause of action for assault and battery flows from the same facts as her Fourth Amendment excessive force claim, and is measured by the same reasonableness standard of the Fourth Amendment. *Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) (battery is "measured by the same reasonableness standard of the Fourth Amendment.")  Under California law, an "arresting officer may use such force as is reasonably necessary to effect a lawful arrest." *Ting v. United States*, 927 F.2d 1504, 1514 (9th Cir. 1991).  In an assault and battery action against a police officer arising from an arrest, a plaintiff must demonstrate that the officer's use of force was unreasonable. *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998).  As discussed in detail above, a jury could find that Defendant Officers' use of force in arresting Plaintiff was unreasonable and resulted in injury to Plaintiff. [*See supra* p.9-13.] Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's fourth cause of action for assault and battery.

B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff[s] suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993)); *see also Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).  "A defendant's conduct is 'outrageous' [only] when it is so 'extreme as to exceed all bound of that [which is] usually tolerated in a civilized community.'" *Hughes*, 46 Cal.4th at 1050–51, 95 (quoting *Potter*, 6 Cal.4th at 1001).  "Severe emotional distress means emotional distress of such substantial ... or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes*, 46 Cal.4th at 1051, 95 (quoting *Potter*, 6 Cal.4th at 1004.)

Plaintiff does not provide any substantive facts or arguments in opposing the Motion for Summary Judgment on the IIED claim.  Consequently, Plaintiff has failed to show there is a

genuine issue of material fact as to whether Defendant Officers' conduct was extreme and outrageous. Even if Defendant Officers' actions were sufficient to constitute extreme and outrageous behavior, Plaintiff has also failed to show that Defendant Officers possessed the requisite intent or reckless disregard to cause emotional distress. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the intentional infliction of emotional distress claim.

## CONCLUSION

For the reasons discussed above, the Court:

1. **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's second cause of action under 42 U.S.C. Section 1983 regarding "false arrest";

2. **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's first cause of action under 42 U.S.C. Section 1983 regarding "excessive use of force";

3. **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's third cause of action under 42 U.S.C. Section 1983 regarding "unlawful policies, customs, or habits";

4. **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's fourth cause of action for assault and battery; and

5. **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's fifth cause of action for intentional infliction of emotional distress.

**IT IS SO ORDERED.**

DATED: December 19, 2012

*[signature]*

Hon. Michael M. Anello
United States District Judge